## W. A. PARK v. THE HEIRS OF JOHN GLOVER.

It is a material alteration of the assignment of a bond, to insert the name of an assignee after its execution, if the instrument, thus altered, has a different effect given it by the alteration; and if the alteration be apparent on its face, it should be excluded as evidence, if objected to, although intended to have been an assignment to the party whose name is thus inserted.

*Quere?* Does the 5th section of the Act of January 25th, 1840, regulating the assignments of written instruments, (O. & W. Dig., Art. 90,) apply to instruments, which appear on their face to have been altered; so as to permit them to be read in evidence, without explanation, unless their genuineness be denied under oath?

That statute applies to cases, where the suit is upon the instrument; and not where it is merely intended to be used in an action of trespass to try title, as a link in the chain of title.

Where the petition describes the assignment of a bond, as genuine and complete, and when produced, it appears on its face, and by comparison with a certified copy offered with it, to have undergone a material alteration, it does not correspond with the allegation of the petition, and is rightly excluded as evidence.

There can be no doubt, but that, upon proper pleadings and proof, the court may give effect to an imperfect assignment, according to the actual intention of the parties.

APPEAL from Bowie. Tried below before the Hon. William S. Todd. The facts are stated in the opinion.

*Samuel F. Moseley,* for the appellant.

*John T. Mills,* for the appellee.—The rule, as now received, is, that the alteration, after execution, made by one claiming a benefit under a deed, or by his privity, destroys the instrument as to him, and he can never sue upon it. (Lewis v. Payn, 8 Cow. 71; Withers v. Atkinson, 1 Watts, 237.) The instrument, so far as the spoliator is concerned, is from that time destroyed and extinguished. (Waring v. Smyth, 2 Barb. Ch. Rep. 133.) If the deed has been in the possession of the party claiming upon it, it affords a presumption, that the alteration was made

by him; and it lies upon him to show, that he was not privy to it. (Barrington v. Bank of Washington, 14 Serg. &. Rawle, 423.)

BELL, J.—This suit was originally instituted by the appellant, Park, against the heirs of John Glover. The petition was in the ordinary form of an action of trespass to try title, and had upon it the indorsement, that the suit was brought, as well to try title, as for damages. The defendants pleaded, not guilty. One of the defendants, Martin Glover, then filed a disclaimer, and the remaining defendants filed a further answer, alleging that they claimed the land in controversy, as the heirs-at-law of John Glover, deceased. The plaintiff then filed an amendment, in which he set forth, that the land described in his original petition, had formerly belonged to John Glover, deceased, and one James F. Dixon, also deceased; that the land had been surveyed, by virtue of the head-right certificate of said Dixon; that said Dixon had given his bond to John Glover, conditioned to convey one-half of said land to said Glover, for value received; and that the said Glover, afterwards, for value received, assigned and conveyed the said bond, and the land called for in the same, to the plaintiff. The amended petition, also, asked to have Mrs. Nancy Dixon, the administratrix of James F. Dixon, made a party. There was a prayer for the appointment of commissioners to make partition of the land, and that Mrs. Nancy Dixon be ordered to convey the half of the land to the plaintiff. Mrs. Dixon was served by publication. There was no further answer by any of the original defendants, nor did Mrs. Dixon file any answer.

When the cause came on for trial, the plaintiff offered in evidence, the original bond from James F. Dixon and Nancy Dixon, to John Glover, the transfer or assignment of the bond by Glover, and a certified copy from the records of the county, of the bond and assignment, which was written upon it. The original bond from Dixon and wife, to Glover, was read in evidence. To the reading of the assignment, which was written on the bond, as evidence, the defendants objected, on the ground that the as-

signment showed, on its face, that it had been altered. The assignment was in the following words :—

"For value received, I transfer all my right, title, and interest to the above tract of land, as described in this bond, to W. A. Park. July 16th, 1844.

"JOHN GLOVER.

"Signed and sealed in presence of us :

"Attest, MARTIN GLOVER, S. C. CROSS."

The words, "to W. A. Park," and the words, "signed and sealed in presence of us," appear to be written in black ink, while all the other words are written in blue ink. The certified copy from the county records, which appears in the transcript, and which is said, in the bill of exceptions, to have been offered by the plaintiff, along with the original, shows that the words, "to W. A. Park," and the words, "signed and sealed in presence of us," did not appear upon the transfer or assignment, or form a part of it, when the original was recorded. The judge who presided at the trial, sustained the objection of the defendants to the introduction, in evidence, of the transfer or assignment, and the same was ruled out.

The plaintiff then called Martin Glover, one of the subscribing witnesses to the assignment, who stated, that all the words written in black ink, in the original assignment, as it then appeared, had been inserted in the transfer, after he signed it as a witness. He also stated, that W. A. Park, the plaintiff, was the same person to whom the said transfer was in fact made, or intended to have been made, at the date thereof. The plaintiff then offered the transfer again in evidence, after this explanation. It was again objected to, by the defendants, and the objection sustained by the court.

The question in the case is, whether or not, the court below erred, in ruling out the assignment, as evidence?

The general rule is stated by Mr. Greenleaf to be, that if, on

the production of an instrument, it appears to have been altered, it is incumbent on the party offering it in evidence, to explain its appearance.   (1 Greenl. Ev. § 564.)   It is also stated, that it is for the court to determine, in the first instance, whether the alteration (apparent on the face of the instrument,) is so far accounted for, as to permit the instrument to be read in evidence to the jury, who are the ultimate judges of the fact.   (See note to § 564, above referred to.)   It is said by the same author, that "any alteration of an instrument, which causes it to speak a language different, in legal effect, from that which it orignally spoke, is a material alteration."   (Id. § 565.)   It is also well established by the authorities, that an instrument which has been fraudulently altered in a material part, is thereby rendered void, and will not support an action.   We think that the addition of the words "to W. A. Park," to the assignment or transfer, as it was orignally written, was a material alteration of it. As it was originally written, it had no legal effect; it spoke no language at all.   By the addition of these words, a distinct legal effect was given to it; it was made to speak effectually and clearly.

The rules which have been referred to above, would present but little embarrassment in their application in a court of law, and in the absence of any statute dispensing with the proof of instruments like the one now in question, unless their genuineness be denied under oath.   But we have been somewhat at a loss to determine, how far the present question is affected by the 5th section of the act of January 25th, 1840, regulating the assignments of written instruments.   That section provides, "that when suit shall be instituted by any assignee, or assignees, of any bond or other written instrument, the assignment or assignments thereof, shall be regarded as fully proved, until the defendant or defendants shall deny, in his or their plea, that the same are genuine; and moreover, shall file with the papers of the cause, an affidavit stating that he or they have good cause to believe, and verily do believe, that one or more of such assignments were forged."

We do not think it necessary to decide, whether or not, this

statute was intended to have application to instruments which appear, on their face, to have undergone alteration, so as to permit them to be read in evidence, without any explanation of the alterations, unless their genuineness be denied under oath. We think the statute cannot have application to the case before us. The suit is not brought upon the bond, or the assignment of the bond. The original petition was in the form of an action of trespass. The amended petition made Mrs. Nancy Dixon a party, and set out the bond, for the purpose of obtaining a decree for the specific performance of it, against Mrs. Dixon. As against the original defendants, the heirs of Glover, the assignment of the bond was treated by the plaintiff, merely as a link in his chain of title. He called it, in his amended petition, an assignment to him, treating it as a genuine and complete assignment. The defendants had a right to expect, that the assignment, when offered, would correspond with the allegation in the plaintiff's amended petition; and when it was offered, and appeared, both on its face, and by comparison with the certified copy which was offered along with it, to have undergone material alteration, we think the defendants had a right to object to its introduction in evidence, on the ground that it was an altered instrument. And we do not think the court erred in sustaining the objection to its admissibility.

Nor do we think there was any error in refusing to permit the instrument to be read in evidence, after the explanation that was made by the witness, Martin Glover. There was no allegation in the pleadings, that authorised the introduction of parol evidence to explain the assignment, as an altered instrument, and to authorise the court, as a Court of Equity, to give effect to it, according to the actual intention of the parties, at the time of the assignment. We do not doubt, that upon proper pleadings and proof, the court might give effect to an imperfect assignment, according to the actual intention of the parties. The judgment is affirmed.

Judgment affirmed.