### KELLER et al. v. MILLER.

No. 14895.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 12, 1947.

Rehearing Denied Jan. 23, 1948.

686

Arch Dawson, of Wichita Falls, for appellants.

Smoot & Smoot, of Wichita Falls, for appellee.

SPEER, Justice.

Plaintiff, W. M. Miller, sued defendants, Lida Keller and her husband, in statutory form of trespass to try title and sought recovery of a fully described 40 acre tract of land in Archer County, Texas. Defendants answered "not guilty" and filed a cross action in statutory form of trespass to try title against plaintiff to recover of him title to 18 acres of the 40 acres described in plaintiff's petition, which said 18 acres are commonly referred to by all parties as the west half of the 40 acre tract involved in plaintiff's petition.

Plaintiff answered the cross action by a general denial and plea of not guilty and timely filed an affidavit of forgery under Article 3726 et seq., Vernon's Ann.Civ.St. With the issues thus joined, trial was to a jury upon special issues, and judgment was entered upon the verdict adversely to defendants, from which judgment this appeal was perfected.

Defendants' points of error 1 and 2 challenge the jury's answer to special issue No. 1 because: (a) There is no evidence to support the answer, and (b) the answer is against the great weight and preponderance of the evidence.

Special Issue No. 1 reads: "Do you find from a preponderance of the evidence that after the deed from W. M. Miller to Mrs. McSpadden (Mrs. Lida Keller) was signed and acknowledged by him, that it was not thereafter altered so as to include part of the minerals in east 20 acres?" The answer: "It was so altered."

Under a trespass to try title petition and answer of not guilty, such as we have in this case, both in the original and cross action, parties may prove every pertinent fact except limitations. Rule 789, Texas Rules of Civil Procedure.

At the beginning of the trial, the parties stipulated that plaintiff, W. M. Miller, and his former wife, Sallie Miller, under deed of January 10, 1921, are the common source of title and that all parties to this suit claimed through such common source, but that nothing in said stipulation was intended to limit either party in proving title from such source. The plaintiff introduced in evidence the foregoing stipulation, the deed referred to in the stipulation describing the land, the affidavit of forgery filed by him, and rested.

From this point on the real law suit was developed. Defendants sought to show that they owned the surface rights to the west one-half of the 40 acres described in plaintiff's petition and one-half of the mineral rights thereunder and one-half of the mineral rights under the east 20 acres of the said 40 acre tract under and by virtue of a deed from plaintiff, W. M. Miller, dated

November 23, 1931 and recorded on December 9, 1931 in the deed records of Archer County.

Plaintiff contended throughout the trial that the deed relied upon by defendants was a forgery. The effect of the contention was that Miller did in fact sign the instrument which defendants relied upon but that subsequent to his executing same seven lines of typewriting had been added to the bottom of the description therein, in which the instrument purported to show that Miller was conveying to defendants one-half interest in the oil, gas and mineral rights in and to the east 20 acres of the 40 acre tract.

Issue No. 1 and the answer returned by the jury were in support of plaintiff's contentions. The testimony by the parties was highly conflicting in many respects. The testimony was undisputed that the offending purported deed was written by a Mr. Thomas, who appears to be a scrivener in the small town of Holiday in Archer County, who was accustomed to writing deeds, releases, contracts and other documents in that community.

In determining whether or not there is any evidence to support a jury verdict, as contended by defendants under the points before us, it is the settled rule that: "If discarding all adverse evidence and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict." 17 Tex.Jur. 910, sec. 410. McCarty v. Hogan, Tex.Civ. App., 121 S.W.2d 499, 502, writ dismissed, and cases there cited on this point.

The points of error must be overruled when the above announced principles are applied.

Defendants introduced in evidence a deed from Mrs. Sallie Miller to Mrs. McSpadden (now defendant Mrs. Keller) to the east 20 acres and after qualifying as to the signature of plaintiff, Mrs. Keller identified a deed from him to her dated November 23, 1931 (the instrument in controversy) and offered it in evidence. A Mr. Thomas who wrote the instrument said he was acquaint-ed with the land involved and with all the parties and that he had written the instrument on his typewriter, that plaintff Miller signed and acknowledged it before him as a notary public. He said that having his memory refreshed by the instrument he remembered the occasion of writing it, that he did not have an independent recollection of what the instrument contained but that it was his best judgment that he wrote the whole of the instrument, that he knew plaintiff could not read and that it was his custom to read instruments over to plaintiff before they were executed and that because of that custom he was sure he read this one to plaintiff. That he did not write anything into the deed after it was signed, and that no one else did so in so far as he knew.

Plaintiff testified that defendant was at one time married to his nephew and after the death of her husband she and her two young sons had lived in his home approximately eleven years; that in about 1928 plaintiff and his then wife were divorced and had a division of property; that in the division he deeded to his wife, Sallie Miller, what is called the east half of the 40 acre tract, reserving unto himself all mineral rights therein, and that Sallie Miller deeded to him what is called the west half of the 40 acres. (These deeds of conveyance between the Millers were in evidence.) He further testified that he agreed to sell defendant, Mrs. Keller, the west 20 acres and one-half of the minerals thereunder at $25.00 per acre; that she paid him the purchase money and that he and she went to Mr. Thomas to have the deed drawn to that effect; that they told Mr. Thomas the nature of their deal and asked him to draw the deed accordingly. Plaintiff said he explained to Thomas in the presence of Mrs. Keller the trade they had made, in which he was conveying to her the west 20 acres with one-half of the mineral rights thereunder and that nothing was said at the time by any one about including any mineral rights under the east half of the tract. He further testified that when Mr. Thomas wrote the instrument out he read it to the witness but that there was nothing in the instrument as read by Thomas pertaining to the mineral rights under the east half of the tract; that he could not,

read and hence does not know what was in the instrument except by having heard it read by Thomas. He said that after Thomas had read it to him as above described, he then signed the paper and Mr. Thomas took his acknowledgment; that the instrument was delivered to defendant, Mrs. Keller, and she took it home with her; that he had never seen it since that time until it was filed among the court papers in the case.

He further testified that he and Mrs. Keller executed an oil and gas lease jointly on the entire tract and that oil was subsequently discovered in two wells, but that because Mrs. Keller had a one-half interest in the minerals under the west half there was to be a division order of royalty and that he did not know defendant was claiming any interest in the oil under the east half until the first royalty payment was made. That upon investigation by employed counsel, the provision relied upon by defendant was found to be in the deed as it appeared of record. He further testified that he never authorized anybody to insert that provision in the deed, either before he signed it or afterwards.

There is further evidence tending to show that at the time plaintiff and defendant jointly executed the oil and gas lease on the entire 40 acres, they received $6.00 per acre and that defendant, Mrs. Keller, received and accepted therefrom $60.00, amounting to $6.00 per acre for her undivided one-half interest in the mineral rights to the west 20 acres. The oil and gas lease covering the block of 40 acres was introduced in evidence and it contained this recitation: "It is understood that Mrs. W. R. McSpadden (Mrs. Lida Keller) only holds a one-half interest in the west 20 acres of the above named land and she, the said Mrs. W. R. McSpadden, is conveying her one-half interest in said west 20 acres above named and Waldo Miller (W. M. Miller) is conveying all of his interest in all of the above named land and containing ——— acres more or less."

There was also testimony showing that Mr. Thomas' typewriter sat on a table in his small office and that he was out of the office a great deal attending to other matters and that any person who cared to do so could enter his office and have access to his typewriter.

There is testimony by a witness who qualified as an expert on typewriting to the effect that the last seven lines of the description in the deed from plaintiff to defendant, Mrs. Keller, under which she claims, which lines cover the conveyance of the one-half interest in the mineral rights under the east half of the 40 acre tract, were written into the instrument after the paper had been removed from the machine and replaced. He pointed out the uneven margin on the left of the writings and that in replacing the paper the lines inserted thereafter were not parallel with those written before removing the paper. He also gave it as his opinion that both parts were written on the same machine but by different persons; this was based upon his knowledge of the imprints made by the machine and the manner of spelling words common to both parts and the corrections made in the part he believed to have been added.

Referable to that part of plaintiff's testimony in which he said that when Mr. Thomas had finished writing the deed from him to Mrs. McSpadden (Mrs. Keller) Thomas read it over to him and it contained no provision for defendant to take one-half of the minerals under the east half of the 40 acres, defendants argue in their brief that Miller's testimony was hearsay, had no probative force and would not support a verdict that the document had been altered. We do not consider that the testimony falls within the class of hearsay. In 17 Tex.Jur. 519, sec. 210, this is said: "Hearsay evidence is that kind of evidence which does not derive its value solely from the credit of the witness himself, but rests in part on the veracity and competency of some other person from whom the witness may have received his information." It is also argued that Thomas who wrote the deed was the agent of plaintiff and if Thomas did not properly read the instrument to him, plaintiff cannot complain of such failure by Thomas. We cannot agree with the contention. There is evidence tending to show that both parties went to Thomas to have the deed drawn and that it was written at the request of

both, and that Thomas wrote it like they both instructed him to do. In such circumstances the scrivener does not become the agent of either to the exclusion of the other party. Thomas v. Baptist- Foundation, Tex.Civ.App., 123 S.W.2d 440, 449, writ dismissed, judgment correct.

■ As before pointed out, the defendant controverted much of the testimony given by plaintiff but both were interested parties and their testimony only raised an issue of fact and the jury resolved the conflict in favor of plaintiff.

■ We have not attempted to refer to all of the testimony introduced by plaintiff and only a small part of that introduced by defendants. We have done this to show that by applying the rule of law above announced there is ample testimony of a substantial nature to support the verdict of the jury in response to issue No. 1. We therefore overrule points 1 and 2.

Special issue No. 2 and its answer found that the alteration of the deed was made without the knowledge and consent of plaintiff Miller. No complaint is here made of that issue and its answer.

Special issue No. 3 was submitted conditionally, to be answered only in the event the jury had found under the first issue that the deed had been altered. It reads: "Do you find from a preponderance of the evidence that said alteration, if any, was made without intent to injure or defraud W. M. Miller?" The answer was: "It was done with such intent."

Points 3, 4, 5, and 7 assert error in the answer to special issue No. 3 because: (a) There was no testimony to support the answer; (b) the answer is against the great weight and preponderance of the evidence; (c) the answer is based on mere surmise, suspicion and conjecture; and (d) the verdict as a whole is insufficient to support the judgment. It may be doubted that the jury finding of fraudulent intent in making the alteration was 'a material issue but for the purpose of this appeal we shall consider that it was.

■ When the affidavit of forgery as provided under Article 3726, Vernon's Ann. Civ.St. was filed, it affected the admissibil-ity in evidence of a previously recorded instrument. There perhaps is a nice distinction between the legal meaning of forgery, non est factum and a plea of alteration, but in so far as the effect either has upon the rule laid down in Article 3726, supra, the courts treat them as synonymous. 17 Tex.Jur. 332, sec. 103 and the many cases cited in the footnote of that section.

■ In Erwin v. Curtis, Tex.Civ. App., 5 S.W.2d 547, writ refused, it was held that the fraudulent filling in of blanks in a signed instrument contrary to authority given will constitute forgery. The jury found in response to special issue No. 1 that the deed relied upon by defendant was altered after its execution so as to include part of the mineral rights in the east 20 acres, and by the second issue that this was done without the knowledge and consent of Miller. There is no testimony showing the exact time the instrument was altered nor by whom the alteration was made. We think these matters are immaterial. The alleged altered or forged instrument indisputedly remained in the possession of defendant, Mrs. Keller, from the date of its execution by Miller until the time of trial, which time necessarily included the period between the date it was signed by Miller and the date of its recordation, December 9, 1931. It is quite obvious that such alteration as the jury found had been made was prior to the date of recordation. It must also follow that no other person than the defendant had an opportunity to make the alteration. It is quite true that Mrs. Keller emphatically denied having made the alteration, in fact she said she could not use the typewriter, but under the general rule that the testimony of interested parties only raises an issue of fact for the jury, her testimony cannot be taken as conclusively establishing her contention as a fact. It has long been the recognized rule of law in this state that "where a party claiming under an alleged altered instrument has been in possession of it, it affords a presumption that the alteration was made by him, and it devolves on him to show that he was not privy to it." Bowser v. Cole, 74 Tex. 222, 11 S.W. 1131, 1132; Occidental Life Ins. Co. v. Jamora, Tex.Civ.App., 44 S.W.2d 808. It is the

universal rule that practically all material facts necessary to establish a cause of action may be proved by circumstantial evidence. The very fact that the alteration found by the jury to have been subsequently written into the executed deed inured to the material benefit of defendant in this case emphasizes the presumption that such change was made to defraud the plaintiff. Otto v. Halff, 89 Tex. 384, 34 S.W. 910, 59 Am.St.Rep. 56; Bohn v. Burton-Lingo Co., Tex.Civ.App., 175 S.W. 173; 3 C.J.S., Alteration of Instruments, § 92.

In view of the foregoing mentioned presumptions of fact resulting in a rule of law, it cannot be said there was no testimony to support the jury finding to the effect that the change was made in the deed to injure and defraud plaintiff Miller. Nor can we say the verdict did not support the judgment entered.

Defendants' sixth point of error presents a unique question. It reads: "The court erred in denying to the defendants their right to open and close the argument before the jury, as shown by defendants' bill of exception No. 1." This point was raised in the first paragraph of defendants' amended motion for new trial. Defendants' bill of exception No. 1 discloses that before argument was begun they requested that their counsel be permitted to open and close the argument and the court denied the request and permitted plaintiff's counsel to open and close the argument before the jury. The court qualified the bill by a statement which in effect showed that at no time had defendants complied with the provisions of Rule 266, Texas Rules of Civil Procedure.

There appears in the transcript another instrument signed by the trial court referable to defendants' bill of exception No. 1. In substance the document shows that when the court undertook to prepare his charge to the jury he invited counsel for all parties to prepare such special issues as they believed should be submitted. Plaintiff's counsel presented and suggested the giving of special issues Nos. 1 and 2 substantially as those finally given by the court, but as framed by plaintiff's counsel they placed the burden of proof upon the plaintiff.

At the same time defendants' counsel proposed and suggested special issues Nos. 1 and 2 as they were given by the court, placing the burden of proof upon the defendants. After the court had prepared the charge as given, special issues Nos. 1 and 2 being in the form requested by defendants, both sides orally requested permission to open and conclude the argument; that of the defendants was refused by the court. We construe this instrument to be a qualification of defendants' bill of exception since it concludes with this language: "Counsel for both sides having disagreed as to the facts surrounding the above matter, the court has prepared and ordered filed as a part of the record in this case the foregoing bill of exception No. 1."

We have two rules of procedure pertaining to the right of parties to open and close the argument before the jury. They are Rules 266 and 269, T.R.C.P. The former relates to the filing of the familiar admission by defendant that plaintiff should recover except in so far as defendant can defeat him under the pleadings.

Rule 269, T.R.C.P., provides in part: " * * * The party having the burden of proof on the whole case, or on all matters which are submitted by the charge, whether upon special issues or otherwise, shall be entitled to open and conclude the argument * * *."

It needs the citation of no authorities to support the statement that in all trespass to try title cases like this the burden of proof is upon plaintiff and that unless he discharges that burden the defendant is entitled to judgment. We think that under the pleadings in this case the burden of proof was upon plaintiff to establish his right to recover. Apparently plaintiff's counsel recognized the rule when he requested the court to so frame the special issues. As above indicated, the special issues were framed by the court to place the burden of proof upon defendants at the request of defendants' counsel.

In the case of Steiner v. Jester, 86 Tex. 415, 25 S.W. 411, 412, the effect of filing the affidavit of forgery was before the court. In that case, however, the affidavit was filed by the defendant but we can see

no difference in that and this case under the rule there announced. There the court said: "When the defendant filed his affidavit, the deed was no longer admissible as evidence under the statute, but, before it could be read in evidence, the execution of it must be proved as at common law. * * * Thus, it may be said the filing of the affidavit of forgery casts upon the person producing the deed the burden of proving its execution. * * * In other words, the burden of establishing this fact (the execution of the deed) was upon the plaintiff (defendant in our case). The burden did not shift, and does not shift, from one party to the other but 'remains upon the party offering a fact in support of his case, and does not change in any aspect of the cause, though the weight of evidence may shift from side to side, according to the nature and strength of the proof offered in support or denial of the main fact to be established.' "

In a broad sense, the defendants did prove the "execution" of the deed from plaintiff to defendants, that is, that Miller actually signed the deed relied upon by defendants. In fact, plaintiff testified that he did sign the instrument. The burden of proof continued to rest with plaintiff to show that the instrument which he had really signed had been materially altered. The theory upon which this case was tried was obviously the contention by plaintiff that the instrument which he signed on November 23, 1931 was thereafter altered so as to include a conveyance of one-half of the mineral rights in and to the east one-half of the 40 acre tract. He repeatedly testified that his agreement with defendant, Mrs. Keller, was that he was only selling her the surface rights to the west 20 acres along with one-half of the mineral rights therein. The contention throughout the trial by defendants was that she purchased not only the west 20 acres with one-half of the minerals but also one-half of the minerals in the east one-half.

As pointed out, Rule 269, supra, provides in effect that the right to open and close the argument is with the one upon whom rests the burden of proof in the whole case, and further provides in effect that if the special issues submitted place the burden of proof upon one of the parties, such party shall have the right to open and conclude the argument.

Walker v. Money, 132 Tex. 132, 120 S.W. 2d 428, involved the right of a defendant to open and conclude the argument to the jury. That case was decided prior to the adoption of Texas Rules of Civil Procedure and sheds little light on the question immediately before us. It construes Article 2183, R.C.S. 1925, which provides that the party having the burden of proof on the whole case shall be entitled to open and conclude the argument. It was held that the court would look to the pleadings to ascertain the nature of the cause of action and thereby determine upon whom the burden of proof rested in the whole case.

In so far as we have been able to find, the particular part of Rule 269, supra, here involved has not been passed upon by our courts.

We conclude with reference to defendants' contention that the burden of proof in this whole case was upon the plaintiff and that defendants could not deprive plaintiff of the right to open and conclude the argument by voluntarily assuming the burden of proof by requesting the court to so frame his charge that the burden would rest upon the defendant. It is apparent that the error was an invited one. There is no doubt that defendants' counsel was perfectly sincere in his belief that the burden of proof was upon his client, but we think he was mistaken. The burden of proof in the trial of the case is an onerous one, while upon the other hand it is universally recognized that the right to open and conclude the argument before the jury is a valuable one. We are not called upon to strike a balance between the two and determine whether or not the voluntary assumption of the burden of proof would outweigh the benefit of the right to open and close the argument.

As pointed out, Rule 269, supra, does provide in effect that the party upon whom the court places the burden of proof in his charge has the right to open and conclude the argument but we construe this to mean that to confer this right the burden of proof must be so properly placed

by the trial court. We think it was not done in this case, and the point of error is therefore overruled.

This brings us to a consideration of plaintiff's cross assignment of error. The verdict was returned on April 15, 1947. On April 25, 1947 plaintiff filed a motion for judgment on the verdict asking the court to enter judgment awarding to him all of the west 20 acres of the 40 acres involved and all of the oil, gas and mineral rights in and under the east 20 acres of the 40 acre tract, not including 3 acres in the extreme northeast corner known as the gin lot. The court overruled said motion for the judgment requested.

The judgment entered by the court, and from which this appeal was taken, gave to plaintiff the mineral rights in the east 20 acres and one-half of the minerals under the west half, and to defendants the surface rights and one-half of the minerals in the west half; other matters were recited not necessary to mention. The testimony is undisputed that plaintiff had previously conveyed the surface rights of the east half of the 40 acres to his wife and that defendant had purchased that tract from her; that plaintiff had sold the surface and one-half of the minerals of the west half to defendant (under the deed in controversy) and received in cash the full consideration therefor. By his cross assignment he seeks to have us reform the judgment and award to him all of the interests and rights which he admittedly had attempted to convey to defendant. The contention is based upon the theory that his deed was found by the jury to have been materially altered and was therefore void. He makes no tender of the purchase money received by him, nor does he in any other way offer to do equity. Plaintiff did not except to the judgment as entered, give notice of or perfect an appeal from the judgment. He made no motion for new trial, and there-

by give the trial court an opportunity to pass upon the contentions made here.

█ Cross assignments of error by an appellee find no statutory provision governing them. The subject is a court made rule, long recognized in this state. They may be considered only in so far as they affect the interests of the appellant or bear on matters presented on the appeal. 3 Tex. Jur. 873, sec. 609. There is somewhere in the rule a line of demarcation under which cross assignments may be said to affect the interest of appellant in the appeal.

In Moore County Carbon Co. v. Whitten, Tex.Civ.App., 140 S.W.2d 880, writ dismissed, correct judgment, and Towery v. Plainview Building and Loan Association, Tex.Civ.App., 99 S.W.2d 1039, writ refused, the court declined to consider the cross assignments of error by an appellee upon the grounds that he had not excepted to the judgment entered, filed a motion for new trial or otherwise given the trial court an opportunity to pass upon the question of the relief sought by him.

█ Under plaintiff's admission of his attempt to sell to said defendant the west 20 acres and one-half of the minerals therein for which he received the agreed purchase price, and for lack of exceptions and motion for new trial, appeal and such procedural matters, we think it would be quite inequitable, if not unconscionable, to sustain his cross assignment and here award to him the additional property rights now sought over and above what he did receive at the hands of the trial court. We therefore overrule the cross assignment of error.

Our final conclusions are that all points of error and the cross point of error should be and are hereby overruled and that judgment of the trial court should be hereby affirmed.